**PALMER BARGE LINE, INC.,**
**Plaintiff-Appellee,**

v.

**SOUTHERN PETROLEUM TRADING CO., LTD., Defendant-Appellant.**

**Nos. 83–2354, 84–2485 and 84–2677.**

United States Court of Appeals,
Fifth Circuit.

Nov. 12, 1985.

Benckenstein, McNicholas, Oxford, Radford, Johnson & Nathan, Mary Ellen Blade, Beaumont, Tex., for plaintiff-appellee.

Gibbs & Ratliff, L. Rand Dennis, Houston, Tex., for defendant-appellant.

Before GARZA, TATE and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge.

Palmer Barge Line, Inc. ("Palmer Barge") brought this maritime action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure seeking to recover damages from Southern Petroleum Trading Company, Ltd. ("Southern Petroleum") for breach of a charter-party. In response to Palmer Barge's complaint, Southern Petroleum asserted that Palmer Barge had signed a release absolving Southern Petroleum of any liability arising out of the charter. After a bench trial, the trial court concluded that Palmer Barge had signed the release under economic duress and thus that the release was invalid. The trial court then entered judgment in favor of Palmer Barge awarding $294,657.02 in damages for breach of the charter. Southern Petroleum appeals from the judgment of the trial court. This Court concludes that the release was not obtained by economic duress. The judgment of the trial court is reversed and judgment is rendered in favor of Southern Petroleum.

## I. BACKGROUND

On June 17, 1980, Southern Petroleum entered into an agreement with Palmer Barge to charter the M/V PALMER and two barges. The charter-party, which was to terminate on June 16, 1981, specified the daily charge for the vessels and obligated Southern Petroleum to pay all fuel and lubrication charges. Until September 1980, Southern Petroleum used the vessels in its business and made regular payments to Palmer Barge.

Beginning in September 1980, however, Southern Petroleum fell behind in making payments under the charter. At an October 1980 meeting with John Palmer, president of Palmer Barge, a representative of Southern Petroleum, Herb Jamison, stated that Southern Petroleum wanted to cancel the charter. Southern Petroleum believed that it had been fraudulently induced into signing the charter at a price well above the market price by its own employee, Mike Schneider. John Palmer denied any knowledge of Schneider's scheme to defraud Southern Petroleum and refused to cancel the charter. According to Palmer, after the October meeting with Herb Jamison, Palmer was notified by Jamison during a telephone conversation that Southern Petroleum would not pay the money due under the charter pending settlement of the charter dispute.

On November 4, 1980, an attorney for Southern Petroleum wrote Palmer Barge that the charter would be cancelled effective November 11 and that Palmer Barge was authorized and urged to recharter the vessels in accordance with its responsibility to mitigate damages. After receiving the November 4 letter, Palmer Barge retained an attorney to provide advice regarding its charter dispute with Southern Petroleum. The attorney retained by Palmer Barge met with Southern Petroleum's attorney in an attempt to settle the dispute. After this meeting, Palmer Barge's attorney drafted a proposed cancellation agreement which was signed by John Palmer and forwarded to Southern Petroleum's attorney under cover of a letter dated November 13, 1980.

Under this proposal, Palmer Barge agreed to cancel the charter in exchange for payment by Southern Petroleum of $357,216.16. At the time of Palmer Barge's proposal, Southern Petroleum owed approximately $278,000.00 in past due payments under the charter.

Southern Petroleum rejected Palmer Barge's proposal but made a counteroffer to Palmer Barge. Southern Petroleum proposed to pay Palmer Barge approximately $283,000.00 in exchange for an agreement to cancel the charter. Palmer rejected this proposal but on Saturday, November 14, 1980, Palmer agreed to cancel the charter in exchange for $278,231.82, the amount due as of November 12, 1980, under the charter. Under the terms of the cancellation agreement, Palmer agreed to cancel the June 17, 1980, charter and to release Southern Petroleum from all claims arising out of either the charter or cancellation of the charter.[1]

Despite Palmer Barge's efforts to recharter the vessels previously chartered by Southern Petroleum, Palmer Barge ultimately received far less in charter fees than it would have under its charter with Southern Petroleum. Consequently, Palmer Barge filed the instant maritime action against Southern Petroleum for breach of contract on September 29, 1981, in the United States District Court for the Eastern District of Texas. The case was tried on February 17, 1983, by consent before a United States Magistrate. On May 20, 1983, the trial court entered judgment in favor of Palmer Barge and awarded damages of $294,657.02 based on the trial

1. The agreement signed by Palmer and Southern Petroleum President Richard A. Willis provides in pertinent part that:

[I]n consideration of the payment by Southern Petroleum Trading Company, Ltd. of Two Hundred Seventy-Eight Thousand Two Hundred Thirty-One and 82/100ths Dollars ($278,-231.82) in cash or cashier's check, the receipt and adequacy of which is hereby acknowledged, Palmer Barge Line, Inc. agrees to the termination and cancellation of that certain Fully Found Charter dated June 17, 1980, existing between it, as Owner, and Southern Petroleum Trading Company, Ltd., as Charterer, which termination and cancellation shall be effective as of November 12, 1980, and Palmer Barge Line, Inc., its successors and assigns hereby release, discharge, and absolve Southern Petroleum Trading Company, Ltd., its successors and assigns from any and all liability, attorneys' fees, claims, demands, damages, actions, causes of action, and suits at law, in equity or in admiralty, of any kind or nature, which may exist or hereafter arise under the said Charter and/or which may exist or hereafter arise out of, or result from, the negotiations, execution, performance, termination and/or cancellation of the said Charter.

court's finding that the November 14, 1980, cancellation agreement was executed under economic duress and was thus invalid.[2] The sole issue presented on appeal is whether the trial court properly concluded that the cancellation agreement was obtained by economic duress.

## II. DISCUSSION

In the instant case, Southern Petroleum refused to make payments under the charter pending settlement of its dispute with Palmer Barge. However, the failure or refusal to pay a contractual debt, without more, is insufficient to establish economic duress. *Hartsville Oil Mill v. United States*, 271 U.S. 43, 49, 46 S.Ct. 389, 391, 70 L.Ed. 822 (1926) ("a threat to break a contract does not in itself constitute duress"). The party seeking to establish economic duress must show that a wrongful threat[3] was made which was of such character as to destroy the free agency of the party to whom the threat was directed. *See Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir.1980), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981)

(applying Texas law); *Tower Contracting Co., Inc. of Texas v. Burden Brothers, Inc.*, 482 S.W.2d 330, 335 (Tex.Civ.App.— Dallas 1972, writ ref. n.r.e.); *Sanders v. Republic National Bank of Dallas*, 389 S.W.2d 551, 554 (Tex.Civ.App.—Tyler 1965, no writ).[4] The determination of whether a party's will has been overcome is a question of fact which must be decided according to the totality of circumstances in a given case. Although duress is difficult to prove, a showing of imminent financial distress coupled with the absence of any reasonable alternative to the terms presented by the wrongdoer may be sufficient to establish economic duress. *See Sonnleitner v. C.I.R.*, 598 F.2d 464, 468 (5th Cir.1979).

The trial court in the instant case found that Southern Petroleum's refusal to pay money due under the charter created sufficient financial distress to constitute economic duress. After carefully reviewing the record, however, this Court is constrained to hold that the finding of the trial court was clearly erroneous. In finding economic duress, the trial court relied upon

---

**2.** On February 18, 1983, after the trial had been completed but before judgment had been entered, Southern Petroleum filed for relief under Chapter 11 of the United States Bankruptcy Code. After the trial court entered judgment in favor of Palmer Barge on May 20, 1983, Southern Petroleum filed a motion to vacate judgment based on the automatic stay provision of the Bankruptcy Code. Southern Petroleum also filed a notice of appeal which was docketed in this Court under No. 83–2354. Palmer Barge later successfully petitioned the Bankruptcy Court to lift the stay. After the stay was lifted, Palmer Barge moved to have a new judgment entered in the trial court and on July 26, 1984, the trial court entered an amended judgment in favor of Palmer Barge. Once again, Southern Petroleum filed a notice of appeal from the trial court's judgment. The appeal was docketed in this Court under No. 84–2485. Southern Petroleum also filed a response to Palmer Barge's motion for a new judgment—however this response was not filed until August 6, 1984. The trial court set a hearing on Southern Petroleum's response and treated the response as a motion for a new trial under Fed.R.Civ.P. 59. On October 29, 1984, the trial court entered its third and last judgment. Southern Petroleum filed a notice of appeal from this latest judgment on November 16, 1984. The notice was docketed in this Court under No. 84–2677. Sub-

sequently, all three appeals by Southern Petroleum were consolidated.

**3.** In the instant case, Southern Petroleum asserted that withholding the money due under the charter was not wrongful because a legitimate dispute existed regarding the amount due under the charter. The trial court observed that whether Southern Petroleum asserted its right in good faith or whether the assertion was merely a pretext to bring greater pressure to bear on Palmer Barge presented a serious question. The trial court apparently resolved this question in favor of Palmer Barge.

**4.** The validity of a maritime contract is normally determined by federal maritime law rather than state law. Nevertheless, in the absence of a clearly established judicially-fashioned maritime rule, this Court may refer to relevant state law. *See Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir.1981). Although several federal maritime cases discuss economic duress, *see, e.g., Silliman v. United States*, 101 U.S. (11 Otto) 465, 25 L.Ed. 987 (1880), the law governing economic duress is not well-developed in maritime law. That maritime law which does exist, moreover, is not inconsistent with the relevant state law—that of Texas. Thus, this Court may properly refer to Texas law.

testimony by John Palmer that Palmer Barge "needed the money" and "would be in bad shape" without the money. Record Vol. II at 27–28. Palmer also testified that Palmer Barge had "an economic gun" held to its head by Southern Petroleum and that if Palmer Barge hadn't received the money due, "the poorhouse [was] just a step away." Record Vol. II at 56.

Given the circumstances in the instant case, Palmer's general statements that Palmer Barge needed the money due under the charter failed to establish financial distress. Moreover, Palmer's conclusory allegations of financial need were simply not supported by the objective evidence introduced at trial regarding Palmer Barge's financial circumstances. Far from being "a step from the poorhouse," at the time Palmer signed the release Palmer Barge had $400,000.00 in its bank account—nearly $125,000.00 more than the sum due under the charter.[5] Palmer Barge's after-tax profits for the year ending on June 30, 1980, were between $700,000.00 and $800,000.00. Moreover, despite the cancellation of its charter with Southern Petroleum, Palmer Barge nevertheless had after-tax profits of between $300,000.00 and $400,000.00 for the year ending on June 30, 1981. While Palmer Barge may have suffered economic discomfort or even economic strain, the evidence adduced at trial does not support a finding of imminent financial distress.

Additional evidence in the record belies Palmer Barge's contention that Southern Petroleum's threat prevented Palmer Barge from exercising its free will. The release was signed only after negotiations had occurred between attorneys representing Palmer Barge and Southern Petroleum. These negotiations resulted in various offers and counteroffers. In fact, the initial settlement offer was proposed by Palmer Barge. After completing this negotiated settlement, Palmer Barge failed to assert its claim of duress for several months.

This delay in raising a claim of duress in addition to the existence of a negotiated agreement between parties represented by counsel is compelling evidence that there was in fact no duress. *See Louisiana-Pacific Corp. v. United States,* 656 F.2d 650, 653, 228 Ct.Cl. 363 (1981) (citing *Silliman v. United States,* 101 U.S. (11 Otto) 465, 25 L.Ed. 987 (1880)).

This Court concludes, therefore, that Palmer Barge failed to carry its burden of establishing economic duress. Since the release, which was properly obtained, absolves Southern Petroleum of any liability arising out of the charter-party, Palmer Barge's breach of contract claim against Southern Petroleum fails. The judgment of the trial court is reversed and judgment is rendered in favor of Southern Petroleum.

REVERSED AND RENDERED.

---

**5.** Of course, the significance of this fact will vary according to the nature and size of the

business involved in any particular case.