**ENDREX EXPLORATION CO., et al.,**
Plaintiffs-counterdefendants-
appellants-cross-appellees,

v.

**Alfred E. PAMPELL, et al.,**
Defendants-counterplaintiffs-
appellees-cross-appellants.

Bankruptcy No. 386–30999–M–11.

Civ. A. No. CA3–88–1178–D.

United States District Court,
N.D. Texas,
Dallas Division.

March 10, 1989.

Joyce W. Lindauer, Judith K. Zehner, and Ernest E. Specks of Johnson, Bromberg & Leeds, Dallas, Tex., for plaintiff, Endrex Exploration Co.

Frank Finn, W.D. Neary, and Wade L. McClure of Thompson & Knight, Dallas, Tex., for plaintiffs, Halliburton Co. and Otis Engineering Corp.

Kenneth Stohner, Jr. and Andrea L. Nation of Jackson & Walker, Dallas, Tex., for plaintiff, Official Unsecured Creditors' Committee.

Thomas Kirkendall of Maddox, Perrin & Kirkendall, Houston, Tex., for defendants-appellees.

FITZWATER, District Judge:

Following a bench trial, several parties appeal the adverse portions of a final judgment entered by the bankruptcy court. Finding that certain of the bankruptcy court's extensive findings of fact are insufficient to permit appellate review, the court vacates the judgment and remands the case to the bankruptcy court for further proceedings.

I.

A.

Appellants, Endrex Exploration Company ("Endrex"), Halliburton Company ("Halliburton"), Otis Engineering Corporation ("Otis"), and The Official Unsecured Creditors' Committee ("Committee"), appeal a final judgment of the bankruptcy court. Appellees-cross-appellants, A.E. Pampell ("Pampell"), Pampell Interests, Inc. ("Pampell Interests"), Zeal Energy Corporation ("Zeal"), and County Management, Inc. ("CMI") (collectively the "Pampell Entities"), cross-appeal.[1] The judgment was entered following a seven-day bench trial of consolidated adversary proceedings from the United States Bankruptcy Courts for

---

1. Third-party defendants in the court below, Harold Duncan, Clyde Brannan, Bill Healy, and Don Pyles, have not appealed the judgment.

the Northern and Southern Districts of Texas in the Endrex chapter 11 case and two actions removed from Texas state court in the CMI chapter 11 case.

Endrex sued CMI for breach of an oil and gas farmout agreement and the amendments thereto, Pampell for tortious interference with contractual relationships, and the Pampell Entities on theories of statutory and common law fraud, economic duress and undue influence, and unjust enrichment. Endrex sought damages, specific performance, and a declaratory judgment.

Halliburton and Otis sued Endrex to recover on open accounts, including an account owed to Padre Tubular, Inc. ("Padre"), which Padre assigned to Halliburton, and on certain promissory notes that Endrex executed to Halliburton. Halliburton and Otis sued the Pampell Entities for the debts of Endrex, on the theory that the Pampell Entities should be treated as a principal in the drilling of certain oil and gas wells, and on the basis of unjust enrichment. Halliburton and Otis also sought to foreclose upon certain mechanics and materialman's liens and deeds of trust and sought equitable subordination of any claims of the Pampell Entities.

The Pampell Entities sued Endrex for breach of the farmout agreement and the amendments thereto and conversion of the working interest proceeds from certain oil and gas wells. They sued Halliburton on the theory that Halliburton was liable for Endrex' debts as a principal or general partner of Endrex. The Pampell Entities alleged fraud on the part of Endrex, Clyde Brannan ("Brannan"), Bill Healy ("Healy"), Don Pyles ("Pyles"), and Harold Duncan ("Duncan"); they alleged tortious interference, breach of fiduciary duty, prima facie tort, and conversion against Endrex, Brannan, Healy, Pyles, and Duncan. The Pampell Entities sought equitable subordination of Halliburton's claims against Endrex. Against Duncan, alone, the Pampell Entities sued for insufficient title opinions. They sued Endrex, Brannan, Healy, and Pyles for breach of good faith, and alleged that Endrex, Brannan, Healy, Pyles, and—

in certain instances—Duncan, were guilty of conspiracy.

The Committee asserted against the Pampell Entities the same claims asserted by Endrex and Halliburton against the Pampell Entities.

The bankruptcy court rejected Endrex' principal claims, finding that Endrex had not entered into an April 1985 amended farmout agreement as a result of duress, and concluding the agreement was valid and enforceable. The court further determined that Endrex was indebted to CMI in the amount of $1.3 million for cash bonuses and $217,000 for location costs and survey fees on certain oil and gas wells ("the Package 4 wells") and that the indebtedness must be paid before Endrex could earn any interest in the wells. The court also held that, upon payment of the cash bonuses, reimbursables, and all costs of drilling and completing the Package 4 wells, Endrex was entitled to receive correction assignments and unit designations for the wells. The court held that CMI was likewise obligated to deliver seismic information to Endrex.

Appellants assert four grounds of error on appeal. They contend: the totality of the circumstances show that Endrex entered certain addenda to the original farmout agreement, as well as the amended farmout agreement, under duress; the bankruptcy court erred in not awarding damages in connection with a finding of fraud; Endrex is entitled to correction assignments and seismic information; and the bankruptcy court erred when it excluded the testimony of a Halliburton witness. Appellees assert five grounds of error by way of cross-appeal. They argue that: Endrex converted the proceeds of production attributable to the Package 4 wells; the bankruptcy court erred in concluding that Endrex could earn the working interest in the Package 4 wells after December 1, 1986; the bankruptcy court erred in finding that Pampell did not possess a claim against Endrex for unpaid cash bonuses covering the other wells; the bankruptcy court erred in requiring the Pampell Entities to deliver seismic information to En-

drex; and the bankruptcy court erred in finding that Endrex suffered severe financial difficulties as a result of the actions of the Pampell Entities.

### B.

The following recitation of the facts incorporates those to which the parties have stipulated and the findings of fact filed by the bankruptcy court.

Endrex entered into an oil and gas farmout agreement (the "original farmout agreement") with CMI on October 26, 1983. The agreement obligated Endrex to drill and complete, at its sole risk, cost, and expense, certain wells (the "Package 1–3 wells") in Fayette County, Texas. Endrex was required to drill ten wells on or before the anniversary date of the farmout agreement. CMI and Pampell Interests owned the leasehold interests on which the wells were to be drilled. Endrex arranged financing from First City Energy Finance Company ("First City") to drill the wells. First City acquired a first lien on the Package 1–3 wells upon drilling and completion.

Endrex commenced drilling the wells in January 1984. It completed the first 22 wells during the period March through July 1984. All the wells were capable of producing in paying quantities, but one well was abandoned back to CMI.

Pursuant to the original farmout agreement, Endrex was to earn 100% of the working interest in the wells and a 75% net revenue interest before payout. Endrex earned its interest in acreage owned by CMI, and thus obtained the right to receive assignments of such acreage, upon the drilling and completing of wells shown capable of producing oil and gas in paying quantities. CMI failed to deliver 14 of the 22 assignments on the 22 wells drilled and completed by Endrex.

Endrex was to pay CMI a pre-spud fee of $10,000 per well, as well as a 30% back-in interest after payout. Upon completion of the first ten wells, Endrex paid CMI the sum of $100,000. At Endrex' request, Pampell and CMI provided certain services to Endrex in connection with the drilling program on the Package 1–3 wells. These services included site selection and preparation, surveying, and geophysical work. Upon request, CMI was required to deliver to Endrex seismic information relating to the farmout area. Pampell was paid in full for these services.

In May 1984, CMI and Endrex entered into the first memorandum of amendment to the original farmout agreement and second addendum to the agreement. The first amendment provided a specific designation of ten obligation wells in the farmout area, along with certain lease protection wells. The second amendment imposed an additional $27,500 per location fee to the $10,000 per well fee to which the parties had previously agreed. The second addendum also provided for a fee of $50,000 per location for wells located on new leases and a total of $100,000 per well for two other locations. The second addendum also increased CMI's back-in working interest, after payout, from 30% (per the original farmout) to 33⅓%. The addendum also denominated two additional ten-well packages as Packages 2 and 3. All changes in the second addendum were made retroactive to the first ten-well package drilled. Endrex drilled 14 wells pursuant to the original farmout agreement, for a total of 22 Package 1–3 wells.

In June 1984, CMI, Pampell Interests, and Endrex entered into a third addendum to the original farmout agreement. This addendum amended the second and third ten-well schedules.

In August 1984, the three parties signed a fourth addendum. This agreement provided that CMI would deliver to Endrex assignments of the assigned unit estates for 14 wells drilled by Endrex for which assignments had not previously been made. In the fourth addendum, Endrex agreed to pay CMI all amounts provided for in the original farmout agreement and its amendments with respect to the drilling of the 22 wells.

By August 1984, Endrex had drilled all 22 wells and it requested the remaining assignments from CMI. After Endrex and CMI executed the fourth addendum, CMI

delivered the remaining 14 assignments and unit designations to Endrex. Endrex reserved all objections to any defects in the assignments. After examining the assignments, Endrex contended that 22 were defective because they either did not comply with the terms of the original farmout or with the Texas Railroad Commission field rules, or both. CMI responded that the unit designations, although not in compliance with the Commission field rules for the Giddings Field, were consistent with other unit designations that had been approved by the Commission.

In October 1984, the Texas Railroad Commission notified Endrex that five of the wells violated Commission Statewide Rule 16. Endrex filed an emergency motion with the United States Bankruptcy Court for the Southern District of Texas—in CMI's chapter 11 case—to compel CMI to comply with the original farmout agreement. In November, the bankruptcy court entered an agreed order that required CMI to cure any defects in assignments and unit designations pertaining to the 16 wells covered by the order. Thomas Kirkendall, Esq. ("Kirkendall"), attorney for the Pampell Entities, entered into the agreed order on CMI's behalf and accepted $865,000 from Endrex. The correction assignments purportedly would cure any defects in the assignments and unit designations pertaining to the 16 wells.

After the agreed order was entered, neither Kirkendall nor any of the Pampell Entities delivered the correction assignments to Endrex after receiving the Endrex payment. Through Kirkendall, the Pampell Entities falsely advised Endrex and First City that CMI was ready, willing, and able to fulfill its obligations under the farmout agreement. They agreed to cure alleged defects in assignments and unit designations on the 16 wells at issue in the emergency motion as soon as Endrex paid allegedly outstanding indebtedness owed to CMI. CMI, in fact, had no intention of taking such action and only made the representation in order to obtain the sum of $865,000 from Endrex. Although the agreed order did not require CMI to perform its obligations immediately, Pampell knew Endrex was relying upon Pampell to perform the obligation promptly. As of the date the bankruptcy court entered its findings of fact and conclusions of law in this case, CMI had not delivered these instruments to Endrex but had placed them in escrow. CMI thus failed to comply with the terms of the agreed order.

Following the entry of the agreed order, Pampell began to redesignate the units and correct the assignments requested by Endrex and conducted several meetings concerning the configuration of the units. Prior to delivery of the corrected assignments and unit designations to Endrex, Endrex advised CMI and Pampell of its costs incurred in drilling and completing the 22 wells. CMI allegedly considered the costs to be unreasonable and excessive. Endrex failed to pay shut-in rentals to CMI during January 1985. CMI did not deliver the corrected unit designations and assignments, allegedly because of the excessive costs incurred by Endrex in connection with the drilling program on the 22 wells and because Endrex had failed to pay shut-in rentals on the wells.

Endrex submitted the Package 1–3 wells to the Texas Railroad Commission as lease wells, rather than unit wells, to avoid the potential consequences of Commission Rule 14–B2.

In January 1985, CMI delivered to Endrex corrected unit designations on two of the 16 units but did not make correction assignments covering the new units. CMI refused to deliver the correction assignments and unit designations on the remaining Package 1–3 wells.

In February 1985, Endrex tendered to CMI shut-in rentals in the amount of $47,-000. Endrex considered the tender to be timely made.

As a result of CMI's refusing to comply with the agreed bankruptcy court order, Endrex suffered severe financial difficulties. First City would not release the requisite funds to pay trade creditors unless Endrex received proper assignments from CMI.

Endrex filed two state court actions against CMI in February 1985 in an effort to obtain CMI's compliance with the original farmout agreement, the addenda thereto, and the agreed bankruptcy court order. CMI counterclaimed, contending that the cost of completing the 22 wells was excessive and thus diminished the value of CMI's back-in interest. CMI also asserted that Endrex had failed to pay the shut-in rentals due under the original farmout agreement, thereby rendering void the previously delivered assignments.

Thereafter, in February through April 1985, Endrex and CMI entered into negotiations in order to resolve their stalemate. The nature and circumstances of the discussions are sharply disputed. The bankruptcy court noted that Pampell contended he was negotiating based upon excessive costs that affected his back-in royalty and Endrex' failure to pay shut-in rentals; the court noted that Endrex contended CMI held it hostage during the negotiations by refusing to relinquish assignments on the Package 1–3 wells unless Endrex agreed to drill 30 additional wells, Endrex paid CMI an additional $900,000 in bonus payments for the original 22 wells already drilled and completed, and all money was put up front. Both parties were represented by counsel during the negotiations, which culminated in the entry of the amended farmout agreement in April 1985. After completing the negotiated settlement, Endrex failed to assert its claim of duress for a considerable period of time.

Under the amended farmout agreement, Endrex obligated itself to drill, at its own cost and expense, 30 additional wells in the contract area. These were designated the Package 4–6 wells. Endrex was to pay ·CMI a cash bonus of $130,000 per well and was to reimburse CMI for location costs, survey fees, and delay rentals incurred by the Pampell Entities with respect to the leases and drill sites under the amended farmout. Endrex was also to deliver motions to dismiss the pending state court litigation. Prior to commencement of drilling, CMI was to place assignments and unit designations in escrow.

In July 1985, Endrex and CMI entered into the first amendment to the amended farmout agreement. This amendment modified the original farmout agreement by separating the drilling obligation of Endrex on the ten wells constituting the Package 4 wells from the other 20 wells that Endrex could elect to drill pursuant to the amended farmout agreement. Endrex drilled ten Package 4 wells between September 1985 and February 1986. One of the ten was non-commercial and the remainder were shown to be capable of producing in paying quantities. The amended farmout agreement terminated on December 1, 1986. The funding date under the amended farmout did not occur. The CMI performance date under the first amendment occurred on or about December 28, 1985.

On July 31, 1985, Zeal, Pampell Interests, CMI, and Endrex entered into a letter agreement regarding the execution of correction assignments pursuant to the first amended farmout. On the same day, Pampell Interests and CMI—by letter agreement—ratified the first amendment.

## II.

### A.

Appellants first contend the bankruptcy court clearly erred in finding against Endrex on its claim of economic duress and undue influence.

The bankruptcy court made two findings of fact that deal explicitly with the validity of this claim. In Finding No. 104[2] the court found:

> Both Endrex and the Pampell Entities were represented by counsel during these negotiations which took place during February, 1985 through early April, 1985 and culminated in the Amended Farmout which was executed in April, 1985. After completing this negotiated settlement, Endrex failed to assert its claim of duress for a considerable time

---

**2.** In addition to its findings of fact, the court also filed first amended and supplemental findings of fact and conclusions of law. Finding No. 104 is set out in its amended form.

after the Amended Farmout became effective. Endrex failed to carry its burden of establishing duress with respect to the Amended Farmout dated April 4, 1985. *Palmer Barge Line v. So. Petroleum Trading*, 776 F.2d 502 (5th Cir. 1985). *See*, Findings 56–58 and 116.[3]

In Finding No. 116 the court found:

During the negotiations and the contractual relationship between Endrex and CMI, both Endrex and CMI were represented by counsel. The Amended Farmout and the First Amendment were negotiated agreements between the parties. Endrex did not raise, in pleadings, the defense of duress at any time prior to early 1986 when the present litigation was initiated between the parties.

Appellants argue that the totality of the circumstances surrounding the execution of the addenda to the original farmout, as well as the amended farmout, demonstrate that CMI and Pampell destroyed Endrex' free agency and that Endrex was at the time in imminent financial distress. They also posit that the bankruptcy court erred by over-emphasizing the significance of Endrex' ten-month delay in filing its claim of duress and the fact that Endrex was represented by counsel during the pertinent negotiations. The Pampell Entities respond that appellants failed to establish that any entity made a wrongful threat and did not prove that Endrex' free will was destroyed by such a threat. They also urge that the bankruptcy court correctly relied upon the delay and representation of counsel factors in finding against Endrex.

The bankruptcy court's findings of fact may not be set aside unless they are clearly erroneous. Fed.R.Bankr.P. 8013; *see In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 799 (N.D.Tex.1986) (citing *In re Consol-*

*idated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir.1986)). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Holloway v. HECI Exploration Co. Employees' Profit Sharing Plan*, 76 B.R. 563, 573 (N.D.Tex. 1987), *aff'd*, 862 F.2d 513 (5th Cir.1988) (citing *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it. *Id.* (citing *Anderson*, 470 U.S. at 573–74, 105 S.Ct. at 1511). Rule 8013 requires the appellate court to give due regard "to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

■ Notwithstanding the considerable deference due the bankruptcy court's fact-finding function, the bankruptcy judge is required to make findings of fact that are sufficiently comprehensive to enable appellate review. "The purpose of findings of fact is three-fold: the findings are an aid in the trial court's adjudication process; the findings are needed for purposes of res judicata and estoppel by judgment; and the findings are an aid to the appellate courts on review." *In re Texas Extrusion Corp.*, 836 F.2d 217, 220 (5th Cir.1988).

Fed.R.Bankr.P. 7052 and 9014 make Fed.R.Civ.P. 52 applicable to adversary proceedings and contested matters. *Id.* Rule 52(a)[4] exacts neither a requirement of punctilious detail nor slavish tracing of claims issue by issue and witness by witness. *Ratliff v. Governor's Highway Safety Program*, 791 F.2d 394, 400 (5th Cir.

---

3. Finding Nos. 56, 57, and 58 state as follows:
   56. On April 4, 1985, [Pampell Interests], CMI and Endrex entered into a Ratification Agreement ("Ratification").
   57. Pursuant to the Ratification, [Pampell Interests] included leases it owned as a part of the leases covered by the Amended Farmout Agreement.
   58. On July 31, 1985, Endrex and CMI entered into the First Amendment of Amended Farmout Agreement ("First Amendment").

4. Fed.R.Civ.P. 52(a) provides, in pertinent part:
   In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of [sic] the credibility of the witnesses.

1986). A trial court's findings satisfy Rule 52(a) and, in turn, Bankruptcy Rule 7052, if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision. *InterFirst Bank of Abilene, N.A. v. Lull Mfg.*, 778 F.2d 228, 234 (5th Cir.1985) (Rule 52(a) case). "[C]ursory findings and conclusions or even the complete lack of findings and conclusions does not necessarily require a reversal of the judgment if a full understanding of the issues on appeal can nevertheless be determined by the appellate court." *Texas Extrusion Corp.*, 836 F.2d at 221 (citing cases).

Nevertheless, findings of fact must be explicit enough to enable the appellate court to review them. *Id.; Ratliff*, 791 F.2d at 400. An appellate court's "duty to respect the trial court's factual determinations gives rise to a reciprocal one on its part to tell [the appellate court] the reasons for them." *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir.1986) (Rule 52(a) case). A mere statement of result cannot stand. *Id.* Moreover, where the trial court fails to make findings of fact with respect to critical or material issues in the case, the deficiency precludes the appellate court from reviewing the correctness of the trial court's ultimate decision. *Ionmar Compania Naviera, S.A. v. Olin Corp.*, 666 F.2d 897, 903 (5th Cir.1982) (Rule 52(a) case).

In the present case, the bankruptcy court's determination that Endrex was not economically coerced to enter into the addenda to the original farmout and the amended farmout is central to the resolution of Endrex' economic duress and undue influence claim as well as the disposition of several other issues that turn upon the enforceability of these agreements. The bankruptcy court confined its explicit duress findings to Nos. 104 and 116. These determinations focus upon the fact that both Endrex and the Pampell Entities, including Endrex and CMI, were represented by counsel during their negotiations and contractual relationship and that Endrex failed to assert its duress claim for a considerable period of time and "did not raise,

in pleadings, the defense of duress at any time prior to early 1986 when the present litigation was initiated between the parties." In Finding No. 104 the bankruptcy court cited the Fifth Circuit's decision in *Palmer Barge Line, Inc. v. Southern Petroleum Trading Co.*, 776 F.2d 502 (5th Cir.1985), in support of the determination that "Endrex failed to carry its burden of establishing duress with respect to the Amended Farmout dated April 4, 1985."

This court is concerned that the bankruptcy court may have misapplied the Texas law of economic duress by focusing too narrowly upon only two of the factors that are properly considered in determining an economic duress claim. At a minimum, the bankruptcy judge failed to support his duress findings with sufficient detail to permit appellate review.

*Palmer Barge,* on which the bankruptcy court expressly relied, is a maritime action in which the circuit court applied Texas law. *Id.* at 505 n. 4 (since federal maritime law not well-developed regarding economic duress in relation to maritime contracts, circuit court could properly refer to Texas law). The court noted that the party seeking to establish economic duress must show the making of a wrongful threat of such character as to destroy the free agency of the party to whom the threat was directed. *Id.* at 505 (citing *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir.1980), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981) (applying Texas law); *Tower Contracting Co., Inc. of Texas v. Burden Brothers, Inc.*, 482 S.W.2d 330, 335 (Tex. Civ.App.1972, writ ref'd n.r.e.); *Sanders v. Republic National Bank of Dallas*, 389 S.W.2d 551, 554 (Tex.Civ.App.1965, no writ)). The Fifth Circuit also recognized that the determination whether a party's will has been overcome is a question of fact, which must be decided according to the totality of the circumstances in a given case. *Id.* Moreover, the court held that, although duress is difficult to prove, a showing of imminent financial distress coupled with the absence of any reasonable alternative to the terms presented by the wrongdoer, may be sufficient to establish

economic duress. *Id.* (citing *Sonnleitner v. C.I.R.*, 598 F.2d 464, 468 (5th Cir.1979)).

In holding that the trier of fact had clearly erred in finding economic duress, the *Palmer Barge* court did rely in part upon the two factors mentioned by the bankruptcy court in its findings of fact. The Fifth Circuit cited these factors as the basis for rejecting the plaintiff's contention that the exercise of its free will had been prevented by the defendant. The trial record reflected that the plaintiff signed a release following negotiations between counsel and that the plaintiff failed to assert its claim of duress for several months. *Id.* at 506.

The Fifth Circuit did not, as the bankruptcy court may have done, circumscribe the economic duress inquiry only to the factors of attorney representation and timeliness of claiming duress. Consistent with Texas law, the court analyzed the evidence in terms of the totality of the circumstances to determine if the plaintiff had made a showing of both imminent financial distress and the absence of any reasonable alternative to the terms presented by the wrongdoer. The circuit court rejected the duress finding because plaintiff's general statement that it needed the money due under the contract "failed to establish financial distress." *Id.* at 506. The court determined that the plaintiff's conclusory allegations of financial need were not supported by objective evidence introduced at trial, *id.*, and thus did "not support a finding of imminent financial distress." *Id.*

This court is unable, absent more complete findings, to determine whether the bankruptcy court's decision is clearly erroneous. There is ample evidence in the record to support a finding, based on the totality of the circumstances, that Endrex faced imminent financial distress and lacked a reasonable alternative to the terms presented by the Pampell Entities. The bankruptcy court found as fact that Endrex "suffered severe financial difficulties" because First City would not fund its loan commitment due to CMI's failure to deliver correction assignments to Endrex pursuant to an agreed court order. *See*

Finding No. 96. The court strongly suggested that Pampell's conduct was wrongful, being undertaken for the purpose of obtaining a substantial sum of money without any intent of performing. *See* Finding No. 87. The evidence also supports a finding that the Pampell Entities made wrongful threats that were of such a character as to destroy Endrex' free agency. *See* Finding Nos. 101–102.

It is not the role of this court, acting in its appellate capacity, to find facts. Neither is this court entitled to influence the credibility choices made by the bankruptcy judge, whose unique perspective to evaluate the witnesses and to consider the entire context of the evidence must be respected. Nor does the court suggest that the bankruptcy court lacked a sufficient basis in the extensive trial record to find against Endrex on duress. But where, as here, the bankruptcy judge may have unduly focused upon factors that, while important, are not controlling, and may have disregarded other evidentiary considerations that are legally significant, the court cannot affirm the finding without a further explanation.

The court is similarly unable to affirm the bankruptcy court's judgment on the basis of an implied finding. If a trial judge fails to make a specific finding on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with his general holding so long as the implied finding is supported by the evidence. *In re Texas Mortgage Services Corp.*, 761 F.2d 1068, 1075 n. 12 (5th Cir. 1985) (bankruptcy judge findings). Where the trial court makes no direct reference to a claim but must necessarily have found a certain fact, the appellate court will imply such a finding. *See, e.g., Clinkenbeard v. Central Southwest Oil Corp.*, 526 F.2d 649, 651–52 (5th Cir.1976). In the present case the bankruptcy court did hold, as part of one finding of fact, that "Endrex failed to carry its burden of establishing duress with respect to the Amended Farmout dated April 4, 1985." But it gave fuller treatment to, and appears to have resolved the duress issue on the basis of, two factors that are neither all-inclusive nor ineluctable. Accordingly, this court cannot say

that the court below necessarily reached an ultimate factual determination regarding the totality of the circumstances in the case, the presence or absence of a wrongful threat, or the existence of imminent financial distress coupled with the absence of any reasonable alternative.

The court will therefore vacate the judgment below and remand the case to the bankruptcy court. The bankruptcy judge need not conduct any proceedings other than to file supplemental findings of fact and conclusions of law and a new judgment if it deems that course appropriate.[5] The manner in which to proceed is best left to the bankruptcy judge's sound discretion, consistent with this court's opinion. If the court does reach a different result on further review, it will certainly determine how a finding of duress impacts upon the rights and obligations of the parties.

### B.

Appellants next challenge the bankruptcy court's determination that they are not entitled to recover money damages for their claim of fraud. They contend the bankruptcy court found that CMI committed fraud but erroneously declined to award Endrex damages. Because the bankruptcy court's findings of fact appear to support a fraud claim under Texas law, the court also will require the bankruptcy court to reconsider this claim on remand.

To establish actionable fraud under Texas law, the party asserting the claim must prove: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted on by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977) (citing *Oilwell Division, United States Steel Corp. v. Fryer*, 493 S.W.2d 487 (Tex.1973)). The bankruptcy court's findings of fact appear to support each of these elements. The court found that: CMI falsely represented its intention to cure defective assignments and deliver them to Endrex (Finding No. 87); CMI had no intention of curing the defect (*id.*); CMI and Pampell knew the representation was false when they made it (*id.*); CMI intended for Endrex to act upon the representation (*id.*); Endrex acted in reliance upon it (*see* Finding No. 88); and Endrex suffered injury by paying $865,000 to CMI (Finding No. 89).

CMI asserts on appeal that it did not intend to mislead or misrepresent a material fact to Endrex and that Endrex failed to prove damages. CMI also contends that Endrex waived its right to recover for fraud by entering into the amended farmout with knowledge of a fraudulent representation.

The court is unable to determine from the bankruptcy court's findings whether the court declined to award damages because it credited the waiver argument. It is clear that the court rejected CMI's assertion that it had no intent to mislead Endrex. *See* Finding No. 87. It appears from the bankruptcy court's determination that Endrex suffered "extreme financial

---

5. The bankruptcy court should not feel constrained to derive its understanding of the Texas law of economic duress only from *Palmer Barge.* While the Fifth Circuit's interpretation of Texas law is binding upon the lower courts absent an intervening decision of an appropriate Texas court, *Palmer Barge* does not purport to be an exegesis of the Texas law of economic duress.

Furthermore, given that the record can plausibly be interpreted to support a finding of duress in favor of Endrex, if the bankruptcy court has accepted certain testimony and rejected other testimony on credibility grounds, it should so indicate, since the determination of witness credibility is within the province of the trial court. *See* Fed.R.Bankr.P. 8013. For example, in Finding No. 101 the bankruptcy court states that "Pampell contended in trial testimony that he was negotiating based upon excessive costs that affected his back end [sic] royalty, plus failure to pay shut-in royalty." This finding suggests that the bankruptcy court believed Pampell was not making a wrongful threat but was, instead, negotiating on a legitimate basis. The finding is not particularly helpful to the task of appellate review, however, because it recounts only what the court found that Pampell *contended,* not what the court found that Pampell actually did.

difficulties," *see* Finding No. 96, and that it paid $865,000 to CMI, Finding No. 89, that the court found that Endrex suffered damages. The bankruptcy court shall, on remand, consider further its fraud findings. The court may, as with the duress claim, proceed in the manner that it deems appropriate, consistent with this court's opinion.

### C.

Although the court is remanding this case for further proceedings, in the interest of judicial economy it will consider an evidentiary matter that appellants have presented for review and that could influence the bankruptcy court's further consideration of the case.

Appellants complain that the bankruptcy court erred by excluding portions of the testimony and exhibits of Richard E. Zadina, Esq. ("Zadina") offered by Halliburton. Zadina is an attorney whom Halliburton employed to investigate Pampell by examining pleadings, depositions, and documents taken from civil litigation in which Pampell was involved, (*see* 6–16–87 Tr. at 161–62), and by interviewing persons connected with that litigation. *See id.* at 181, 192. Halliburton intended to introduce portions of the testimony to demonstrate Pampell's reputation for truth, honesty, and veracity, *id.* at 162, and for impeachment purposes, *id.* at 165–66, 173–74. Halliburton also desired that Zadina opine concerning the nature and outcome of the other litigation in which Pampell and his companies were engaged. *See, e.g., id.* at 182–84. Appellants have demonstrated no abuse of discretion in the bankruptcy judge's decision to exclude this evidence.

A trial court has broad discretion with reference to evidentiary rulings, and such decisions will not be disturbed absent a clear abuse of that discretion. *Jones v. Benefit Trust Life Ins. Co.,* 800 F.2d 1397, 1400 (5th Cir.1986). An appellate court will reverse a judgment on the basis of an evidentiary ruling only where it affects a substantial right. *Muzyka v. Remington Arms Co.,* 774 F.2d 1309, 1313 (5th Cir. 1985). Because the trial court's discretion is considerable, reversible error based on an evidentiary ruling will be found only in exceptional cases. *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.,* 662 F.2d 1104, 1107 (5th Cir.1981) (citing *Excel Handbag Co. v. Edison Bros. Stores, Inc.,* 630 F.2d 379, 388 (5th Cir.1980)).

The Pampell Entities objected to portions of the Zadina testimony and exhibits on various grounds. The bankruptcy court sustained many, but not all, of the objections. Halliburton then offered a bill of exceptions (6–16–87 Tr. at 181–196). At the conclusion of the bill, the bankruptcy court excluded the testimony offered in the bill on the basis of Fed.R.Evid. 403. *See id.* at 196–97. This rule permits a trial judge to exclude even relevant evidence if, in the court's sound discretion, it determines that the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403; *see United States v. Gustafson,* 728 F.2d 1078, 1083 (8th Cir. 1984), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1985) (evidence otherwise admissible under Rule 404(b) may be excluded under Rule 403). The bankruptcy court invoked the Rule to avoid "waste of time and needless [repetition]."[6] (6–16–87 Tr. at 197).

This court has no hesitancy upholding the trial court's ruling regarding the Zadina testimony and documents because appellants have failed to demonstrate that the bankruptcy court abused its discretion under Rule 403. Appellants' opening brief and reply brief devote portions or all of nine pages to this ground of error. The briefs do not explicitly address Rule 403. Appellants focus instead upon the admissibility of the evidence. Because Rule 403 permits the exclusion of even admissible evidence, and since the balancing task is a

---

**6.** The trial transcript states "needless recitation." This is either a transcription error or a misspo-

ken word on the part of the bankruptcy court.

matter generally left to the wide, and wise, discretion of the trial court, *see United States v. Medico,* 557 F.2d 309, 317 (2d Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977), this court will not reverse the bankruptcy court's Rule 403 determination where the appellants have not clearly shown an abuse of discretion.

The excluded testimony, moreover, portended the needless consumption of court time for evidence of questionable value. Zadina was asked to analyze other apparently contentious and complicated lawsuits, to give his opinion on matters that were not beyond the comprehension of the ordinary trier of fact, and to assay and characterize Pampell's patterns and practices in other contexts. The trial court was well-within its discretion to exclude such testimony because it would have opened a jurisprudential Pandora's Box, requiring the parties to litigate not only the present case but also to relitigate the merits of the other cases from which Zadina derived his opinions. This court cannot say the bankruptcy court abused its discretion by confining Zadina's evidence in the manner it did.

### D.

The parties have raised other issues on the appeal and cross-appeal. The court neither reaches nor expresses an opinion on them because their resolution may be affected by the bankruptcy court's further consideration of the case.

### III.

The judgment appealed from is VACATED and the case is REMANDED to the bankruptcy court for further proceedings in accordance with this opinion.

VACATED AND REMANDED.