Angelita **RAMIREZ** et al.,
**Plaintiffs-Appellants,**

v.

Fred **HOFHEINZ** et al.,
**Defendants-Appellees.**

**No. 79–2721**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 18, 1980.

* Fed.R.App.P. 34(a); 5th Cir.R. 18.

Ruben Rendon, Houston, Tex., for plaintiffs-appellants.

David Lee Crawford, John E. Fisher, Asst. City Attys., Houston, Tex., for defendants-appellees.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

HENDERSON, Circuit Judge:

The appellants, who are Spanish-surnamed women, are present and former employees of the Houston Police Department. They allege that the defendants, among them several city officials and the city itself, denied them promotions and beneficial transfers because of their race. The suit was filed as a class action, on behalf of all Mexican-American employees of two divisions of the Police Department, seeking damages and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e *et seq.*[1]

The employees of the Police Department are covered by two sets of regulations, one for uniformed personnel, another for civilians. Uniformed personnel are governed by regulations codified in a Texas statute. Tex.Rev.Civ.Stat.Ann. art. 1269m (Vernon). Satisfactory performance on a written examination is a prerequisite of entry into or promotion within the uniformed system. Written examinations were once required of civilian personnel, but they were not used at the time of the violations alleged in this case.

The individual plaintiffs worked in the Police Department's Identification Division.

---

1. The plaintiffs also sued under 42 U.S.C.A. §§ 1981 and 1983, but their appeal of the adverse judgment is not premised on these sections. See Fed.R.App.P. 3(c)

As relevant here, there are two types of employees in the division: fingerprint classifiers and clerks. Fingerprint classifiers perform the function suggested by their job title, and the position is part of the uniformed service. Clerks are civilian employees. There are three grades of clerks; Clerk III being the highest, a supervisory position.

Until 1972 most fingerprint classifiers were men. Two of the defendants, Kenneth Swatzel, superintendent of the Identification Division, and his supervisor, F. B. Bankston, Chief of Technical Services, selected two white women, who were clerical workers in the department, to train as fingerprint classifiers. The trial court did not find it necessary to determine whether they were given on-the-job training to prepare them for their merit examinations. Subsequently, two other female employees were promoted to Clerk III positions.

The crux of the named plaintiffs' complaint is that they were not considered for these positions and promotions.[2] The district court initially certified this case as a class action, the class being composed of all Mexican-American civilian employees of the Identification and Records Division of the Police Department. The Records Division is administratively distinct from the Identification Division, although the Chief of Technical Services supervises both. After a trial the court concluded that certification had been improvidently granted, and decertified the class. This facet of the case is not appealed. None of the named plaintiffs was employed in the Records Division. There was no attempt to prove discriminatory employment practices in the Records Division, and there was testimony that the efforts of Mexican-American employees of that division to improve work conditions and secure promotions generally met with

success. After excluding the Records Division, the court held that the eleven Mexican-American employees of the Identification Division should not be treated as a class. This conclusion followed from the court's opinion that there were differences between the grievances of male and female employees, and doubts about the suitability of the named plaintiffs as class representatives. In any case, since we affirm the judgment of the district court, we may safely assume the plaintiffs would not have us extend that judgment to the other members of the class they formerly represented.

The trial court's order is fourteen pages, nine of which encompass findings of fact. It thoroughly covers the structure of the two divisions and the work done therein, as well as the grievances of the individual plaintiffs.

It begins with what is styled a "Preliminary Statement": "After several weeks of thought . . . the court is unable to arrive at any accurate method of disposing of this case other than to state forthrightly that this case must fail because the plaintiffs have simply not produced any credible evidence in support of their positions." Opinion at 1. The court found that the defendants had made every effort to accommodate the plaintiffs and all Mexican-American employees. The tone of the opinion demonstrates that the judge thought the suit was vexatiously brought, and entirely without merit.[3]

The court found that Ms. Lara did not meet the admittedly subjective requirements of the Clerk III position, i. e. "the ability to obtain cooperation, inspire confidence, and obtain results through supervising other people." Opinion at 8. The court obviously felt she was singularly unqualified.[4] The other three plaintiffs alleged

---

**2.** Guadalupe Lara has since become a Clerk III in another part of the city government.

**3.** The court considered inviting the city to petition for attorney's fees for "the unjustified expense to which they have been wrongfully subjected in defending this meritless case," which had been "irresponsibly filed." Opinion at 13–14. The district judge refrained from doing so

because the plaintiffs were without funds to pay fees, and because "persons with perceived grievances should not be unduly discouraged from bringing these grievances to court." *Id.*

**4.** We quote from the memorandum opinion of the district court:

The manner in which she handled her own personal dissatisfaction commencing in the

discrimination in the selection of fingerprint classifiers. The judge said the plaintiffs never "had a good faith desire to become fingerprint classifiers." Opinion at 12.[5] He also found that this was a skilled position, and that the plaintiffs had failed to demonstrate they possessed "either the educational attainments or the emotional maturity and stability necessary" for the job. Opinion at 12. In fact, he observed, the city, although not obligated to do so, had shown they were not "even arguably qualified to receive training as fingerprint classifiers." *Id.* at 13.

According to the appellants, reversal is mandated by either of two reasons. They maintain that the trial court's findings of fact and conclusions of law do not meet the requirements of Rule 52 of the Federal Rules. Their second argument, not entirely consistent with the first, appears to be that the court erred on the merits. Neither position is well founded.

The memorandum opinion consists of an extensive discussion of the events leading to this suit. It does not contain any detailed discussion of the applicable law, nor does it cite any statutes or cases. As indicated above, the district court found that the plaintiffs were not qualified for the positions they sought and that the defendants chose others only because they were qualified.

■ In a trial without a jury, the judge, as the trier of fact, must state, with some degree of precision, his findings of fact and conclusions of law. Fed.R.Civ.P. 52.[6] When the findings are inadequate the appellants are entitled to a remedy. *See*

*Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956). On the other hand, we are not editors, and, so long as the purposes behind the rule are effectuated, failure to meet the technical requirements of Rule 52 does not warrant reversal or remand. *Cf. Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774, 779 (1940) ("fair compliance"); *Ginsberg v. Royal Ins. Co.*, 179 F.2d 152, 153 (5th Cir. 1950) ("Although more specific findings . . . would have been helpful and appropriate, a failure to make them" does not warrant reversal.); *Shellman v. Shellman*, 95 F.2d 108, 109 (D.C.Cir. 1938).

■ As relevant here, Rule 52 serves two purposes: "to engender care on the part of the trial judge in ascertaining the facts," *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 432 (5th Cir. 1977); *accord, Corley v. Jackson Police Dept*, 566 F.2d 994, 999–1000 (5th Cir. 1978); *United States v. Forness*, 125 F.2d 928, 942–43 (2d Cir.), *cert. denied*, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942); and to make possible meaningful review in the appellate courts, *id., Echols v. Sullivan*, 521 F.2d 206, 207 (5th Cir. 1975); *Nickerson v. Travelers Ins. Co.*, 437 F.2d 113, 114 (5th Cir. 1971). *See generally* 5A Moore's Federal Practice ¶¶ 52.05[1] and 52.06 (2d ed. 1979). The memorandum opinion of the district court is quite sufficient when measured against the standard suggested by these purposes. There is no question but that the court focused on the perceived incompetence of the plaintiffs. We must next determine whether its conclusions are adequately supported in the record, and, if so, whether

---

fall of 1973 and the disruption she created in the Identification Division during the first quarter of 1974 persuades this court beyond reasonable doubt that Mrs. Lara was absolutely disqualified to do supervisory work during that period of time.
Opinion at 9.
  [H]er conduct has demonstrated that she did not possess the qualities of stability, ability to work with others and ability to present grievances with a calm, objective manner which are necessary to work as a supervisor in any organized activity.
Opinion at 12.

5.  They never applied for the job.

6.  In all actions tried upon the facts without a jury . . . , the court shall find the facts specially and state separately its conclusions of law thereon . . . . Findings of fact shall not be set aside unless clearly erroneous . . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.
Fed.R.Civ.P. 52(a)

they justify the result. We answer both questions in the affirmative and affirm the judgment of the district court.

■■■ A Title VII action lies in favor of one who is discriminated against because of race or who is a member of a racial group aggrieved by a "facially neutral" employment practice. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 581–82, 98 S.Ct. 2943, 2952, 57 L.Ed.2d 957, 970 (1978) (Marshall, J., dissenting in part). In either case, a prima facie case is established only by showing, among other things, that the person was qualified for the job denied him or her. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973); *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971). *See also Garcia v. Gloor*, 609 F.2d 156, 163–65 (5th Cir. 1980) (other job qualification issues). If a neutral policy has a "disparate impact" on a certain group, a plaintiff need only show that the policy has such an effect, and the burden of justifying the policy then shifts to the employer. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The trial court correctly applied these principles to the facts of this case.

■■■ As for the criticism that the findings of the district court are contrary to the weight of the evidence, we need only observe that the plaintiffs entirely fail to raise a credible argument, let alone prove it. For example, they complain about lack of opportunity to train on a "CRT" machine (a word processor), yet Ms. Rodriguez admits she received training when she requested it, and that the training (and in fact the machine) was of little use to anyone. Moreover, they entirely ignore the testimony of the defendants that ability to use the machine had no bearing on promotions. After a thorough review of the evidence, we may justifiably conclude that this is yet another case where "while paying lip service to the clearly erroneous test of Rule 52(a), Fed.R.

Civ.P., on our review of the district court's fact findings, [the appellants'] briefs and arguments are predicated upon facts, inferences and conclusions that the trial court neither found nor was compelled to find." *Japhe v. A-T-O, Inc.*, 481 F.2d 366, 370 (5th Cir. 1973).

As the plaintiffs note, this is a "disparate treatment" case, governed by *McDonnell Douglas*. Therefore, if the plaintiffs were not qualified for these jobs, the judgment must be affirmed. There is no suggestion that the plaintiffs were qualified for the positions, but rather they urge that the white women who obtained the jobs were not any more qualified, or that the qualifications purportedly used by the defendants were "mere pretext." *See McDonnell Douglas*, 411 U.S. at 798, 93 S.Ct. at 1822, 36 L.Ed.2d at 675.

The court carefully examined the evidence presented and found otherwise. It is true that the decision of whom to promote or train rested largely on subjective factors.[7] Of course, courts must carefully scrutinize such subjective evaluations, which often appear to be arbitrary and are always susceptible to discriminatory application. *Rowe v. General Motors Corp*, 457 F.2d 348 (5th Cir. 1972). However, the district judge did carefully review the employment practices and decisions of the Police Department. We must agree that the qualifications for the positions involved in this case require subjective evaluation. The defendants' affirmative-action employment policy gives further support to the conclusion that subjective criteria were not used to disguise discriminatory action, although we hasten to emphasize that good intentions do not excuse racial discrimination, intentional or otherwise. *See Griggs v. Duke Power*.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**7.** At one time a qualifying test was required for the Clerk III position. Ms. Lara had passed this test three times and failed it once. The test was no longer in use when these promotions were made.