In the Matter of TEXAS EXTRUSION CORP., et al., Debtors.

**TEXAS EXTRUSION CORP., et al.,**
**Plaintiffs-Appellees,**

v.

**PALMER, PALMER & COFFEE,**
**Defendant–Appellant.**

No. 87–1072.

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1988.

Richard W. Ward, Philip I. Palmer, Jr., Dallas, Tex., for defendant-appellant.

James B. Harris, Sam P. Burford, Jr., Dallas, Tex., for Lockheed Corp.

Emil Lippe, Jr., Carol E. Farquhar, Dallas, Tex., for plaintiffs-appellees.

**9.** 712 F.2d 219, 221 (5th Cir.1983).

**10.** *In re Johnson*, 708 F.2d 865, 868–69 (2d Cir. 1983).

218

Before WILLIAMS and
HIGGINBOTHAM, Circuit Judges, and
SANDERS *, District Judge.

JERRE S. WILLIAMS, Circuit Judge:

The law firm of Palmer, Palmer & Coffee appeals the district court's order vacating the bankruptcy court's findings of fact and conclusions of law made in support of an earlier order of the bankruptcy court awarding administrative fees and expenses. We affirm the district court but on grounds different from those relied upon by the district court.

I.

This case springs from complicated bankruptcy proceedings. We state only those facts essential to an understanding of this related case.

In 1979, Texas Extrusion Corporation established a contractual relationship with Lockheed Corporation and several of Lockheed's affiliates. Under this arrangement, Lockheed committed itself to purchase hard-alloy aluminum extrusions from Texas Extrusion which Texas Extrusion committed itself to produce. Lockheed Finance Corporation, a Lockheed affiliate, loaned Texas Extrusion $5.0 million to modify existing equipment and plant facilities to manufacture the aluminum for the Lockheed contract.

Numerous disputes soon arose between Texas Extrusion and Lockheed. Apparently Lockheed's demand for aluminum from Texas Extrusion decreased substantially. Since the revenues of Texas Extrusion at that time were derived primarily from the Lockheed contract, it defaulted on its repayment of the $5.0 million loan from Lockheed. In September 1981, Texas Extrusion

and Lockheed executed a second group of contracts in an attempt to resolve their disputes. Despite this attempt at reconcilation, Texas Extrusion once again defaulted on the repayment of its loan from Lockheed. Texas Extrusion and its parent corporation, Pickens Industries, Inc., filed voluntary petitions for bankruptcy under Chapter 11 on March 24, 1982. Texas Extrusion, as debtor in possession, then filed adversary proceedings against Lockheed Corp. and Lockheed Finance Corp., alleging fraud, fraudulent conveyances, and breach of contract. Texas Extrusion sought actual damages of $40 million and punitive damages of $80 million.

Palmer, Palmer & Coffee initially represented Texas Extrusion and Pickens Industries in their bankruptcy proceedings and Texas Extrusion in its lawsuit against Lockheed. The law firm also represented Richard and Louise Pickens in their individual bankruptcy proceedings.[1] In June 1983, however, Texas Extrusion decided to discharge Palmer, Palmer & Coffee as its counsel in the Lockheed suit and hire another law firm. The district court granted this change of counsel. Palmer, Palmer & Coffee, however, continued to represent Texas Extrusion, Pickens Industries, and the Pickenses in their bankruptcy proceedings.

After significant post-petition losses, a Chapter 11 bankruptcy trustee was appointed on November 3, 1983, for Texas Extrusion. The trustee terminated operations of Texas Extrusion around November 22, 1983. The trustee believed a successful reorganization of the company was not possible. On November 23, 1983, Lockheed, Texas Extrusion's largest creditor, and the Official Creditors' Committee of Texas Extrusion submitted a joint plan for reorganization and a disclosure statement for Texas Extrusion, Pickens Industries, and Richard

---

* District Judge of the Northern District of Texas, sitting by designation.

1. Richard and Louise Pickens, husband and wife, together owned over 80% of the stock of Pickens Industries which in turn owned 100% of the stock of Texas Extrusion. Richard and Louise Pickens personally guaranteed part of

the loan from Lockheed. Richard filed for personal bankruptcy under Chapter 11 on January 3, 1983, and Louise filed on November 21, 1983. The Pickenses also filed a lawsuit as individuals against Lockheed making essentially the same allegations as Texas Extrusion and seeking $15.5 million in damages.

Pickens. This plan essentially liquidated the assets of the three debtors with the proceeds going to the various creditors. The plan compromised the value of the Lockheed suits and called for their dismissal with prejudice. Eventually the plan was amended to include the bankruptcy estate of Louise Pickens. After a confirmation hearing on the plan, the bankruptcy court on March 20, 1984, approved a Second Amended Joint Plan of Reorganization covering each of the four debtors over the objections of the debtors.

This reorganization plan placed a $135,-000 ceiling on administrative fees and expenses, including compensation for attorneys. Palmer, Palmer & Coffee submitted a claim as counsel for debtors for unpaid fees and expenses of $38,322.84 against this $135,000. The Texas Extrusion trustee, the trustee's attorneys, and the attorneys for the Official Creditors' Committee of Texas Extrusion also filed fee and expense claims against the $135,000. These claims exceeded the $135,000 allocation. The trustee, the creditors' committee, and Lockheed all filed objections to Palmer, Palmer & Coffee's requested fees. These parties criticized Palmer, Palmer & Coffee for failing to prosecute the debtors' claims against Lockheed and for failing to submit a reorganization plan for Texas Extrusion.

The bankruptcy court conducted a hearing on the fee and expense applications in chambers. No record of this hearing was made. On July 18, 1984, the bankruptcy court entered its Order Allowing Fees and Expenses. The order awarded Palmer, Palmer & Coffee its entire $4,627.34 expense claim but only $15,594.66 in fees.[2] The fees of the other attorneys were also reduced, but apparently not to the degree of Palmer, Palmer & Coffee's claim. Furthermore, the bankruptcy court decreed that the fee allowance to Palmer, Palmer & Coffee was final whereas the fee allowances to the other attorneys were interim allowances. The court did not explain in its order how it arrived at the fee allowances

of the various attorneys, why it awarded Palmer, Palmer & Coffee a smaller percentage of its fee claim than the other attorneys, or why it made the fee allowance final as to Palmer, Palmer & Coffee but not as to the other attorneys. The district court approved this fee order pursuant to Emergency Interim Rules. Neither the district court nor the bankruptcy court made either findings of fact or conclusions of law on the fee application order. No party appealed this award of attorneys' fees.

In March 1985, the debtors, through another law firm, served a demand letter on Palmer, Palmer & Coffee demanding payment for legal malpractice. The debtors alleged that Palmer, Palmer & Coffee had been inept as bankruptcy counsel and had failed to pursue adequately the debtors' various claims against Lockheed. Palmer, Palmer & Coffee was officially removed as counsel for debtors by an order signed on July 22, 1985. On August 2, 1985, Palmer, Palmer & Coffee filed with the bankruptcy court proposed findings of fact and conclusions of law for the previous July 1984 fee order, then over a year old. Mr. Phillip I. Palmer, Jr. of the firm, admitted later that the reason these proposed findings and conclusions were submitted was to aid in exonerating Palmer, Palmer & Coffee from liability in the legal malpractice suit which the debtors threatened to file.[3] The proposed findings, not surprisingly, are full of self serving language which gives high praise to the work of Palmer, Palmer & Coffee and explains that the reduction in the fee amount awarded the firm was in no way due to inadequate performance.

None of the parties who had previously objected to the fees of Palmer, Palmer & Coffee filed an objection to these proposed findings of fact and conclusions of law. The debtors, however, filed a written objection through their new attorney on August 7, 1985, and requested a hearing. A hearing was scheduled for October 8, 1985. On

---

**2.** Palmer, Palmer & Coffee was allowed to retain a $44,500 retainer which had been paid prior to the bankruptcy petition filing.

**3.** This legal malpractice suit was eventually filed against Palmer, Palmer & Coffee on November 5, 1985, in Texas state court.

August 30, 1985, on his last day as an active judge before retiring, the bankruptcy judge who had conducted the fee application hearing and presided over these bankruptcy proceedings signed the proposed findings and conclusions without making any changes or conducting a hearing. The debtors filed a motion to amend the proposed findings and conclusions. The successor bankruptcy judge conducted a hearing on this motion but declined to modify the findings. The bankruptcy court, however, did grant leave to appeal the order containing the findings and conclusions. Debtors did appeal to the district court. The court voided the findings as being "clearly erroneous" in a Memorandum Order of December 30, 1986, 68 B.R. 712. Palmer, Palmer & Coffee appeal this judgment of the district court.

## II.

Fed.R.Civ.P. 52(a) requires that when the court is the trier of fact, "the court shall find the facts specifically and state separately its conclusions of law thereon."[4] The rule is made applicable to bankruptcy adversary proceedings and contested matters by Bankruptcy Rules 7052 and 9014. In the case at bar, the fee application of Palmer, Palmer & Coffee was a "contested matter" because there were objections filed to the application. Rule 9014 makes applicable Rule 7052 which in turn invokes Fed.R.Civ.P. 52.

■ The purpose of findings of fact is threefold: the findings are an aid in the trial court's adjudication process; the findings are needed for purposes of res judicata and estoppel by judgment; and the findings are an aid to the appellate courts on review. *Ramirez v. Hofheinz*, 619 F.2d 442, 445 (5th Cir.1980); *United States v. Forness*, 125 F.2d 928, 942–43 (2d Cir.), cert. denied, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942). *See also* 5A Moore's Federal Practice ¶ 52.06. Findings of fact are especially important when the trial court's decision turns in part upon factual determinations.

Certainly the intent of Rule 52 is that the court should make and file its findings of fact and conclusions of law prior to the entry of judgment. Rule 52(b), however, provides, in pertinent part: "Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly." This 10 day period of Rule 52(b) is jurisdictional and cannot be extended in the discretion of the court. *Gribble v. Harris*, 625 F.2d 1173, 1174 (5th Cir.1980); *Matter of Vecco Construction Industries, Inc.*, 33 B.R. 757, 758–59 (Bankr.E.D.Va. 1983). *See also Bright v. Bechtel Petroleum Inc.*, 780 F.2d 766 (9th Cir.1986).

In the case at bar, the bankruptcy court made no findings of fact to support its award of attorneys' fees in its July 1984 fee order, yet it was a final appealable judgment as it applied to Palmer, Palmer & Coffee. *In re Yermakov*, 718 F.2d 1465, 1469 (9th Cir.1983). We have held such findings necessary when the award is appealed to this Court. We have established a twelve factor test to guide the bankruptcy court's discretion in determining reasonable attorney's fees. *Matter of Lawler*, 807 F.2d 1207 (5th Cir.1987); *Matter of First Colonial Corp. of America*, 544 F.2d

---

**4.** Rule 52(a) reads in full:

(a) **Effect.** In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for finding are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

1291 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The bankruptcy court did not even mention this twelve factor test in its fee order.

 Normally when the trial court fails to make findings and an appeal is taken, the appellate court will vacate the judgment and remand the action for appropriate findings to be made on the material issues. *Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Ionmar Compania Naviera, S.A. v. Olin Corp.,* 666 F.2d 897 (5th Cir.1982). Findings, however, are not a jurisdictional requirement of appeal. Furthermore, cursory findings and conclusions or even the complete lack of findings and conclusions does not necessarily require a reversal of the judgment if a full understanding of the issues on appeal can nevertheless be determined by the appellate court. *Gupta v. East Texas State University,* 654 F.2d 411, 415 (5th Cir.1981); *Ferrero v. United States,* 603 F.2d 510, 515 (5th Cir.1979); *Armstrong v. Collier,* 536 F.2d 72, 77 (5th Cir.1976).

In the case at bar, however, there was no appeal of the bankruptcy court's fee order. The parties involved in and affected by this order accepted it and made no motions for findings of fact and conclusions of law to support the order for purposes of appeal. Palmer, Palmer & Coffee submitted findings of fact and conclusions of law for the purpose of defending against an anticipated legal malpractice suit and not for the purpose of appealing the fee order itself. No relief is being sought from the fee order itself by any party. The findings and conclusions submitted by Palmer, Palmer & Coffee, therefore, have only the stature of gratuitous statements of the retiring bankruptcy judge. They do not constitute a valid order because the bankruptcy court had no jurisdiction to adopt them over one year after the entry of its order. Under Rule 52(b) the court ceased to have jurisdiction to issue the findings 10 days after its order setting the fees. *Gribble v. Harris, supra.*

We affirm the district court's vacating of the findings and conclusions relating to the fee order. The bankruptcy court did not have jurisdiction to adopt them. We do not reach the question whether the findings were "clearly erroneous."

AFFIRMED.