United States Court of Appeals,

Fifth Circuit.

No. 91–1580.

Lyle S. CHANDLER and Adolphus A. Maddox, on behalf of themselves and others similarly situated, Plaintiffs-Appellees,

v.

The CITY OF DALLAS, et al., Defendants,

The City of Dallas, Defendant-Appellant.

April 9, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:

Although the multiple causes of action brought by the Appellees involved the driver safety program instituted by the City of Dallas in 1978, on appeal this case is about Federal Rule of Civil Procedure 52(a).

I.

Through Administrative Directive 3-3, the City of Dallas ("City") instituted a driver safety program in 1978.[1] The driver safety program basically disqualified any City employee with one of the specified health conditions from certification as a primary

---

[1] We have gleaned this factual framework primarily from the district court's judgment entered April 29, 1991 and memorandum opinion and order entered November 4, 1986 denying the City's motion to dismiss for failure to state a claim and denying in part and granting in part the City's motion for summary judgment.

driver.[2]  Without certification as a primary driver, an employee was ineligible for any City job classified as a "primary driver position."  A job classified as a primary driver position involved driving as an integral part of carrying out the duties of the job. Two physical conditions precluded employees from certification as primary drivers eligible for primary driving positions:  1) diabetes mellitus that required insulin for control;  and, 2) poor eyesight—distant visual acuity uncorrectably worse than 20/40 Snellen in each eye or worse than 20/40 Snellen in both eyes, a field of vision of less than 70 degrees in the horizontal meridian in each eye, or the inability to recognize the colors of standard traffic signals.

In 1977, Lyle Chandler was diagnosed as having diabetes mellitus severe enough to require insulin for control.  The Dallas Water Utilities division of the City of Dallas ("DWU") hired Chandler in 1981 as a T-9 Electrical Repairer.  The City classified the T-9 as a primary driving position in 1984.  In 1985, however, Chandler failed a driver's physical administered by the City's doctor, although he had driven in the position for about three years.  Presumably because Chandler could not qualify as a primary driver, DWU would not allow him to take a promotional exam for the position of Electrical Repair Supervisor T-10.  Chandler continued as a T-9, with other employees driving him as demanded by his job

_____

[2]AD3-3 has been amended numerous times since its adoption. After the Plaintiffs filed this lawsuit, the City changed AD3-3 to allow employees with specified conditions (other than substandard vision, alcoholism or drug use) to obtain a waiver that allows their certification as primary drivers.

duties. DWU demoted Chandler to Electrical Repairer T-7 in 1986. DWU traces the demotion to Chandler's violations of City personnel and safety rules. Chandler was later denied the opportunity for promotion to the position of Water Maintenance Supervisor 13. Chandler contends that the City's failures to promote him and its demotion of him constituted discrimination based on his physical impairment and retaliation for his opposition to the AD3-3 driver safety plan.

Since childhood, Adolphus Maddox has had visual acuity uncorrectably worse than 20/40 in his left eye. DWU hired Maddox in 1982 and, from 1983 through early 1985, employed him as a Plant Mechanic T-7. The City classified the T-7 as a primary driving position in 1984. In 1985, Maddox, like Chandler, failed a driver's physical, although he had driven for two years in the T-7 position. Maddox continued as a T-7, with other employees driving him when needed. Presumably because Maddox could not qualify as a primary driver, he has not been eligible for a promotion to Plant Mechanic T-9. Maddox argues that the City discriminated against him based on his physical impairment and retaliated against him for his opposition to the City's driver safety program.

In late 1985, Chandler and Maddox sued the City of Dallas on behalf of themselves and all others adversely affected by the AD3-3 driver safety program ("Plaintiffs") under the Rehabilitation Act of 1973, the Revenue Sharing Act of 1982, the Texas Commission on Human Rights Act, the 14th Amendment and 42 U.S.C. § 1983.

Plaintiffs claimed that the AD3-3 discriminated against employees with diabetes requiring insulin and visual deficiencies by barring them from jobs designated as primary driving jobs, and, further, that the City retaliated against them for their opposition to the driver safety plan. The district court denied the City's motion to dismiss, and denied the City's motion for summary judgment, except with respect to claims barred by the statute of limitations. The district court certified a class of City employees who failed the driver's physical and defined two narrow subclasses of persons with the same medical conditions as Chandler and Maddox for injunctive relief.

After a bench trial, the court entered judgment for the Plaintiffs, holding that the City discriminated against them in violation of the Rehabilitation Act, the Texas Commission on Human Rights Act, the free speech clause of the first amendment (as to Chandler and Maddox only), the due process and equal protection clauses of the fourteenth amendment, and § 1983. The court awarded Chandler retroactive repeal of his demotion, and awarded Chandler and Maddox retroactive promotions, lost back pay and benefits (including interest), and compensatory damages. The court awarded the class injunctive relief requiring the City to: 1) retroactively certify all class members as primary drivers unless their medical conditions actually interfered with their driving abilities; and, 2) abstain from discriminating against any class member unless the City showed that the employee's medical condition interfered with the employee's ability to drive safely. The

Plaintiffs were awarded reasonable attorney's fees and costs of litigation.

The City presents six issues on appeal:  1) Whether the district court failed to make specific findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a);  2) Whether the City's driver safety program violated the Rehabilitation Act;  3) Whether the City's driver safety program violated the Texas Commission on Human Rights Act;  4) Whether the City's driver safety program violated the Plaintiffs' free speech, equal protection, and due process rights;  5) Whether the district court properly certified the class under Federal Rule of Civil Procedure 23;  and, 6) Assuming the district court properly resolved the liability issues, whether the Plaintiffs were entitled to remedies under § 1983 on their first amendment, due process and equal protection claims.

## II.

Federal Rule of Civil Procedure 52(a) provides that "[i]n all actions tried upon the facts without a jury ..., the court shall find the facts specially and state separately its conclusions of law thereon."  On August 10, 1990, at the end of a five-day trial, the district court verbally announced certain findings of fact and conclusions of law.  The court stated that it

> had hoped at this point to be able to state [its] findings of
> fact and conclusions of law, and [it] simply d[id] not have
> enough time to go through all the evidence and make the notes
> that [it] needed to do that....  [The court] hoped to be able

to do that before the end of the month.  All that will take place at that hearing w[ould] be [the] dictating of [the court's] findings and conclusions.... but [the court would] tell [the parties] what [it was] going to find today.[3]

On April 29, 1991, the court entered an order declaring that supplementation of the findings and conclusions announced in court was unnecessary because they "adequately state[d] the factual and legal basis" for the court's decision.  So, based on the verbal findings and conclusions, the court entered judgment in favor of the Plaintiffs.  In its order, however, the court invited the parties to submit additional proposed findings and conclusions. The Plaintiffs later filed forty-eight pages of proposed amended and additional findings of fact and conclusions of law.  The docket sheet reflects that the City did not respond, nor did the court act on the proposed findings and conclusions.

The City argues that the findings of fact and conclusions of law are not sufficiently detailed to adequately state the factual or legal basis for the district court's decision.  This deficiency, according to the City, is not a mere technicality—it prevents effective review because this Court cannot understand the issues on appeal.  The City urges this Court to vacate the judgment and remand for proper findings and conclusions.

Plaintiffs contend that the district court's findings of fact

---

[3]We gained access to this statement through the City's Record Excerpts.  We note, however, that the district court's verbal announcements following closing argument at trial have not been included in the record on appeal.  Neither the City nor the Appellees has moved to supplement the record with these final pages of the trial transcript.

and conclusions of law satisfy the requirements of Rule 52(a). Plaintiffs argue that this Court can engage in "meaningful appellate review" based on multiple rulings made by the district court, colloquies with counsel at the class certification hearing and trial, and oral findings of fact and conclusions of law issued at the class certification hearing and the bench trial. Plaintiffs essentially maintain that the *totality* of findings and conclusions throughout the protracted, five-year course of this litigation meets the underlying requirement of Rule 52(a): providing the appellate court with a full understanding of the issues.

The requirement found in Federal Rule of Civil Procedure 52(a) that courts "shall find the facts specially" exists to serve several aims: 1) aiding the trial court's adjudication process by engendering care by the court in determining the facts; 2) promoting the operation of the doctrines of res judicata and estoppel by judgment; and, 3) providing findings explicit enough to enable appellate courts to carry out a meaningful review. *Texas Extrusion Corp. v. Palmer, Palmer & Coffee (In re Texas Extrusion Corp.),* 836 F.2d 217, 220 (5th Cir.) (citing *Ramirez v. Hofheinz,* 619 F.2d 442, 445 (5th Cir.1980) (citations omitted)), *order aff'd,* 844 F.2d 1142, *cert. denied,* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988); *Lopez v. Current Director of Tex. Economic Dev. Comm'n,* 807 F.2d 430, 434 (5th Cir.1987) (citing *Ratliff v. Governor's Highway Safety Program,* 791 F.2d 394, 400 (5th Cir.1986) (footnotes omitted)); *see also* Fed.R.Civ.P. 52(a) advisory committee's note. Fifth Circuit cases interpreting the rule have

long recognized that "failure to meet the technical requirements of Rule 52 does not warrant reversal or remand"—"so long as the purposes behind the rule are effectuated." *Ramirez,* 619 F.2d at 445 (citations omitted). The rule " "exacts neither punctilious detail nor slavish tracing of the claims issue by issue and witness by witness.' " *Collins v. Baptist Memorial Geriatric Center,* 937 F.2d 190, 195 (5th Cir.1991) (quoting *Lopez,* 807 F.2d at 434 (quoting *Ratliff,* 791 F.2d at 400) (footnote omitted)), *cert. denied,* --- U.S. ----, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992). Moreover, nothing in the rule precludes verbal announcement of findings of fact and conclusions of law. Rule 52(a) expressly permits the district court to orally proclaim its findings and conclusions in open court.[4]

Under the rule, of course, we subject the district court's findings of fact to a deferential standard of review—we will not "set aside [findings of fact] unless clearly erroneous." Fed.R.Civ.P. 52(a). This translates into a need for findings, however, that " "provide a sufficiently definite predicate for proper appellate review.' " *Westwego Citizens for Better Gov't v. City of Westwego,* 872 F.2d 1201, 1203 (5th Cir.1989) (citations omitted). Indeed, "when the trial court's decision turns in part upon factual determinations," findings of fact are crucial to a court of appeals engaging in the process of review. *Texas*

---

[4] "It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court." Fed.R.Civ.P. 52(a).

*Extrusion,* 836 F.2d at 220. A prior opinion of this Court eloquently captures our view of the interplay between the roles of the district and appellate courts:

> Fact finding is the trial court's province.... We do remain responsible, however, for the ultimate justness of trial determinations drawn before us. Since this is so, we must know the basis of the trial court's decisions: "this Court cannot be left to second-guess the factual basis for the district court's conclusion.' ... Review *is* our responsibility, and we cannot review bare conclusions.... In short, our duty to respect the trial court's factual determinations gives rise to a reciprocal one on its part to tell us the reasons for them.... [A] mere statement of result—cannot stand.

*Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731, 734–35 (5th Cir.1986) (emphasis in original) (citations omitted). Quite simply, a district court's failure to detail its findings or the evidentiary basis for its findings "negates our ability to apply the clearly erroneous standard of review." *Lopez,* 807 F.2d at 434.

Rule 52(a) also obligates the district court to "state separately" its conclusions of law. We do not minimize the district court's task of detailing its conclusions of law. Courts of appeal subject a district court's conclusions of law to a *de novo* review—we are not constrained by the deferential standard of reviewing only for clear error. Despite this distinction, the duty of the district court to "state separately its conclusions of law thereon" becomes particularly important when the case, like this one, involves complex legal issues. For when the district court carefully enunciates and explains its resolution of questions of law, we know that it has thoughtfully and diligently decided the

legal issues. Moreover, the preparation of sufficiently complete conclusions of law augments our comprehension of the legal issues on appeal. We must understand not only the factual, but also the legal reasoning of the district court to enable us to conduct a "just, orderly review of the rights of the parties before us." *Browning v. Kramer,* 931 F.2d 340, 344 (5th Cir.1991).

The touchstone of our Rule 52(a) analysis has remained the same over the years: Whether we, as an appellate court, can obtain a "full understanding of the issues on appeal." *Texas Extrusion,* 836 F.2d at 221 (citations omitted). Here, the district court did not completely fail to make findings of fact or conclusions of law. We do detect, however, an insufficiency "in detail and exactness" to demonstrate the factual and legal basis "for the ultimate conclusion[s] reached by the court." *See Acme Boat Rentals, Inc. v. J. Ray McDermott & Co.,* 407 F.2d 1324, 1325 (5th Cir.1969). The district court did not make findings on each issue of fact, nor did it disclose the factual basis for the findings verbally stated at the end of trial[5] or reveal its determination of each issue of law. The court did not—at any point—*articulate* its resolution of many of the factual and legal issues necessary to support the judgment for Chandler, Maddox, and the certified class on their numerous causes of action. For example, the portion of the judgment rendering the City liable on the Plaintiffs' Rehabilitation Act claim alone

---

[5]If we accepted Plaintiffs' invitation to locate factual findings in the district court's *pre-trial* rulings and colloquies with counsel, the need for a trial would disappear because the district court would have essentially decided the case before trial.

required multiple findings of fact: Whether the Plaintiffs were "handicapped" within the meaning of the Rehabilitation Act; whether the Plaintiffs were "otherwise qualified" for their jobs at DWU; whether the Plaintiffs worked for a "program or activity" that received "federal financial assistance"; and whether the Plaintiffs were discriminated against solely because of their handicaps. Without findings on these and other issues of fact, we cannot obtain a complete understanding of the issues on appeal and shoulder our responsibility to review for clear error. *Cf. W.F. Dev. Corp. v. Office of U.S. Trustee (In re W.F. Dev. Corp.),* 905 F.2d 883 (5th Cir.1990) (professing a "full understanding of the issues on appeal even absent findings of fact" only because the "case [wa]s not fact specific"), *cert. denied,* --- U.S. ----, 111 S.Ct. 1311, 113 L.Ed.2d 245 (1991). In terms of conclusions of law, for instance, we cannot determine the district court's reasons for deciding, as a threshold legal issue in its First Amendment analysis, that Chandler and Maddox proved that their speech involved matters of public concern. For these reasons, we hold that the district court did not satisfy the requirements of rule 52(a).

We do observe, however, that the district court patiently heard all of the evidence, allowed the parties to present their cases in full, and sought to resolve the case in a responsible manner. The record in this case is massive and the issues complicated, which makes the task of articulating the findings of fact and conclusions of law quite burdensome. But that is exactly

why we need detailed findings of fact and thorough conclusions of law.

Our resolution of this threshold issue flows from our inability to ascertain the factual and legal bases for the district court's decision. This inability prevents our review of the remaining issues raised by the City in this appeal. Our precedents teach that we must, therefore, vacate the judgment of the district court and remand for the district court to fully articulate its findings of fact and conclusions of law. *See Utley v. Commissioner of Internal Revenue,* 906 F.2d 1033, 1041 (5th Cir.1990) (quoting *Texas Extrusion,* 836 F.2d at 221); *Cities Serv. Co. v. Ocean Drilling and Exploration Co. (In re Incident Aboard the D/B Ocean King),* 758 F.2d 1063, 1072 (5th Cir.1985) (citations omitted).

## III.

The findings of fact and conclusions of law play a duet; the district court tunes one to the other. Under Federal Rule of Civil Procedure 52(a), the district court must record appropriate portions of the musical selection for us to hear on appeal. When we hear a blank tape, however, we cannot evaluate the tenor of the melody.

We are thus compelled to VACATE the judgment of the district court and REMAND the case for detailed findings of fact and concomitant conclusions of law consistent with this opinion.