United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 9, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-50624

BRANDON C. SAMPLE,

Plaintiff - Appellee,

versus

R. D. MILES, Etc; ET AL,

Defendants,

SUSAN KILGORE; WINSTANLEY F. LUKE,

Appellants.

--------
05-50727
--------

BRANDON C. SAMPLE,

Plaintiff-Appellant,

versus

R. D. MILES, in his individual capacity;
R. WILSON, in his individual capacity;
A. FIGUEROA, C. BICKLE, FNU CHILDERS;
BRANDON WARREN; J. FLORES; V. GRIEGER;
R. SMITH; T. LANCE; RONALD G. THOMPSON;
KATHLEEN HAWK SAWYER; HARLEY LAPPIN,

Defendants-Appellees.

--------------------
Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:03-CV-311
--------------------

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In the district court below, federal prisoner Brandon Sample claimed, *inter alia*, that Bureau of Prisons officials retaliated against him for filing grievances during his stay at a Bastrop, Texas facility. The district court granted partial summary judgment to defendant Lappin, denying Sample's request for an injunction requiring Lappin to promulgate policies forbidding retaliation and train officers accordingly. After a two-day bench trial, the court found for defendants on the remaining claims, denying Sample's request for money damages. It then sanctioned two Assistant United States Attorneys, Winstanley Luke and Susan Kilgore, $500 jointly and severally, payable to Sample, for discovery abuse. Sample appeals the judgment against him and the AUSAs appeal the sanctions. We address each in turn.

I

Sample argues first that we should remand, under Federal Rule of Civil Procedure 52(a), for the district court to state more specifically its factual findings because the court, at the end of trial, orally found for defendants with little explanation and later, in its Findings of Fact and Conclusions of Law, ruled only that "[t]here is no credible evidence that any defendant considered plaintiff's use of the administrative remedy program when changing

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

plaintiff's job assignments."[1]  Although the district court must state its factual findings sufficiently for us to review them, it need not state findings in great detail.[2]  Here, the court did more than describe the rudimentary facts out of context - it also recounted the relevant storyline.  More importantly, the trial essentially centered on the credibility of Sample's witnesses versus that of prison officials, hence the court could do little but state which group was credible.  Sample complains that the court did not discuss evidence contradicting its findings, including pre-trial statements by defendants that contradicted their trial testimony, but the court's questioning at trial, its recognition that Sample's case was "by no means frivolous," and, in its Findings of Fact and Conclusions of Law where it sanctioned defendants' attorneys, discussion of the conflicting evidence show that it clearly considered the contradictory evidence and chose to believe defendants' trial testimony.  No more was required.[3]

---

[1] The court concluded similarly that there was "no credible evidence" that Sample's use of the grievance procedure affected the investigation of an altercation between Sample and another inmate or the resulting disciplinary proceeding.  It also concluded that his transfer to another facility caused no harm and that Sample suffered no damages from any alleged acts by defendants. We construe Sample's Rule 52(a) claim to apply to the former finding because he briefly mentions it, but he does not attack as too bare the damages finding.

[2] *See Chandler v. City of Dallas*, 958 F.2d 85, 88-89 (5th Cir. 1992).

[3] Sample also complains that the court never mentioned his allegation that defendants Lance and Smith confiscated his property and threw away some grievances.  But the court heard evidence about these exact claims, particularly Lance's and Smith's testimony, and later ruled that Sample "suffered no damages as a result of any conduct by Defendants" and that Sample failed to establish "a causal link between his assertion of First Amendment rights and any of the conduct of which he complains."  Again, the court simply believed the defendants, and it did not have to detail every claim.

Sample also attacks the court's findings as clearly erroneous. We can reverse under that standard only if, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed."[4] Where, as here, "the findings are primarily based on oral testimony and the district judge has viewed the demeanor and judged the credibility of the witnesses," the complaining party's burden is particularly heavy.[5] The district court, being entitled to believe defendants' testimony, was not clearly erroneous in concluding that no retaliation occurred.[6] Sample quibbles with two possible minor factual inaccuracies in the court's findings – dates and the exact number of different types of grievances filed by Sample – but they are, if erroneous, harmless.[7]

Sample next asserts that the court should've granted his post-trial motion, under Rule 201(d), for judicial notice of several facts, particularly the existence of the contradictory evidence. Again, the court's Rule 52(a) order makes clear that the court considered all the evidence, including the contradictory evidence. In any event, Sample cites no authority – and we cannot find any – for the proposition that a court should, *after* a trial, take notice

---

[4] *United States v. Gypsum Co.*, 33 U.S. 364, 395 (1948).

[5] *See Justiss Oil Co. V. Kerr-McGee Refining Corp.*, 75 F.3d 1057, 1066 (5th Cir. 1996).

[6] Sample complains, *inter alia*, that the court called what he calls an assault on him a "fight," and that, contrary to the court's findings, his transfer to another facility harmed him. Again, the court had discretion to believe defendants' testimony to the contrary. He also complains about the court's alleged mischaracterization of the precise nature of his transfer, but Sample mischaracterizes the court's findings, which reflect clear understanding that he was transferred for safety reasons.

[7] See FED. R. CIV. P. 61.

of facts in the record and discussed at trial.  The court did not abuse its discretion.[8]

Sample asserts that the district court erred by concluding that, as a matter of law, he had the burden to prove that but for the alleged retaliatory motive, the discriminatory acts would not have occurred.  As he properly concedes, this issue is foreclosed by precedent,[9] and he raises it only to preserve it.  Sample also asserts that the district court misstated its jurisdiction as arising under 28 U.S.C. § 1346(b) when it arose under 28 U.S.C. § 1331.  He is correct, but a miscitation to a correct legal principle is no basis for reversal.

Sample served Rule 36 requests for admissions on defendants Miles and Wilson after filing the complaint but before serving process on those defendants; Miles and Wilson never answered the requests.  The district court excluded those ostensible admissions at trial, concluding that Miles and Wilson were not yet "parties" under Rule 36 when the requests were served.  Samples urges this was error.  To the contrary, under Rule 36 "parties" do not exist until they are served.  Indeed, it would be unfathomable to allow discovery on people not yet served, people who have no notice of any suit or knowledge of any controversy.[10]  Sample cites Sixth and Seventh Circuit cases allegedly to the contrary, but those cases

---

[8] *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998).

[9] *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

[10] *See Henderson v. United States*, 517 U.S. 654, 671-72 (1996) (describing nature of service of process).

are easily distinguishable and, in any event, not controlling.[11]

Although year 2000 amendments to Rule 26 exempt entities in certain cases, like pro se prisoner cases, from the required initial disclosures, the initial discovery conference requirement, and the moratorium on discovery until after that conference, those amendments allow discovery on entities immediately after they are served, not before. Hence the district court ruled correctly.

Sample argues next that the district court erred in holding his claims against defendant Lappin for injunctive relief barred by sovereign immunity, citing the APA's waiver of sovereign immunity for claims for injunctive relief, 5 U.S.C. § 702. Sample never

_____

[11] In *Clay v. United States*, 199 F.3d 876, 880 (6th Cir. 1999), the Sixth Circuit concluded that, under 26 U.S.C. § 7609, petitioners-taxpayers had only twenty-days after the IRS mailed summons to a third-party bank to challenge the summons. In rejecting petitioners' argument that Rule 6(e) extended this period by three-days, the court noted that 26 U.S.C. § 7609 set the period at twenty-days "[n]otwithstanding any other rule of law." The court held, alternatively, that Rule 6(e) provides additional time only to a "party," and "[a] person becomes a party only by beginning a lawsuit, Fed. R. Civ. P. 3, or by being joined as a party after the suit has been instituted. A noticee of a summons under 26 U.S.C. § 7609 is not a 'party' unless and until a suit is commenced. Therefore...Rule 6(e) has no application to the time period before the filing of a petition to quash because the taxpayer has not yet become a party." It's true, of course, that an entity becomes a party by beginning a lawsuit - no service on it is required - and that was the court's point, highlighted by its statement that petitioners weren't parties until *they* commenced suit. (They couldn't have been defendants, hence "is commenced" means "commenced by petitioners.") Its statement that entities are "parties" after being "joined" cannot fairly be read to mean defendants or third-parties become "parties" under the Rules before being served - a conclusion utterly irrelevant to the case that would have been sheer dicta.

In *Howell By Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997), the Seventh Circuit held simply that an entity becomes a defendant for purposes of subject-matter jurisdiction analysis when the plaintiff names it in a complaint, regardless when or if the defendant is served, as long as the defendant hasn't been dismissed. The court noted that the district court below never dismissed the unserved defendant, thus requiring analysis on appeal of that defendant's citizenship for diversity purposes. This sensible holding does not bear on when an entity becomes a "party" for discovery, or under the Rules generally; the court, in using the word "party" in stating that "a party becomes a defendant not when he is served but when the complaint naming him is filed," meant "entity." Otherwise, of course, someone is a "party" before he's even a "defendant" - before he's named in complaint. We can't all be parties all the time.

cited the APA in his amended complaint; moreover, we have rejected similar arguments because, like here, there is no final agency action, as the APA requires.[12]

Finally, Sample argues that the court abused its discretion in denying his motion for contempt, and his motion for costs, arising from his efforts to serve one defendant. The record makes clear that no impropriety attached to this incident, and that defendants' counsel complied with the court's order when he realized his mistake, justifying the court's exercise of its wide discretion to deny both motions.[13]

Consequently, the judgment for defendants is AFFIRMED.

II

A district court has discretion, under both Federal Rule of Civil Procedure 37 and its inherent powers, to sanction attorneys for discovery abuse.[14] Personal sanctions like those here are meant to punish people personally culpable.[15] We review sanctions imposed

---

[12] *See Armendariz-Mata v. U.S. Dep't of Justice, DEA*, 82 F.3d 679, 682 (5th Cir. 1996) (rejecting contention that alleged seizure of property was final agency action).

[13] *See Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987).

[14] *See, e.g., Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 n.2 (5th Cir. 1990); *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001). Sanctions under Rule 37 are limited to specific discovery violations, serving foremost to penalize misconduct, especially when levied against an attorney personally. *See, e.g., Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1033 n.2 (5th Cir. 1990). Sanctions under a court's inherent power to punish abusive litigation practices are permissible but should be used as a last resort, if sanctions under the Federal Rules don't fit and there is "bad faith." *See Toon*, 250 F.3d at 952.

[15] *See supra* note 14; *B.F. Goodrich Tire Co. v. Lyster*, 328 F.2d 411, 415-16 (5th Cir. 1964) (regarding Rule 37, "In the final analysis, a court has a responsibility to do justice between man and man....").

under either authority for abuse of discretion.[16] We have appellate jurisdiction to review the order imposing sanctions here.[17]

The district court abused in discretion in sanctioning AUSA Luke because the record shows that Luke had no involvement in any discovery abuse - or any discovery.  Luke had no involvement in the case after August 3, 2004, his last paper filing being July 15, due to a serious injury requiring surgery and therapy.  The only two ostensible acts of discovery before August 3 were his innocuous motion to stay discovery, which the court granted, and the court's order that Luke provide Sample with certain defendants' addresses so Sample could serve them, an order which the record shows resulted from no misconduct and about which the court never professed concern.  Although Luke didn't officially withdraw until September 23, when new AUSA Kilgore filed her notice of appearance and a notice of withdrawal for Luke, and some abuse took place between August 3 and September 23, Luke's delay in officially

---

[16] *See Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002); *see also, e.g., Smith Intern. Inc. v. Texas Commerce Bank*, 844 F.2d 1194. 1199 n.3 (5th Cir. 1998) (explaining that "abuse of discretion" isn't pejorative and "sounds worse than it really is").

[17] We have general appellate jurisdiction under 28 U.S.C. § 1291. Moreover, Luke's and Kilgore's appeals were timely - their April 4 notice of appeal was within the sixty-day window applicable where "the United States or its officer or agency is a party" under Federal Rule of Appellate Procedure 4(a)(1)(B).  Their May 6 notices of appeal from the district court's April 7 ruling, in which the court must have construed appellants' post-trial motion as a motion under Rule 60(b), do not themselves give us appellate jurisdiction and do not affect the timeliness of the appeal, *see Browder v. Ill. Direction, Dep't of Corrections*, 434 U.S. 257, 263 n.7 (1978); they might function as "amendments" to the appeal, limiting the scope of issues to the April 7 order, *see, e.g., Sanders v. Clemco*, 862 F.2d 161, 164 n.3 (8th Cir. 1988), but that's irrelevant here because the April 7 ruling encompasses the entire issue on appeal.  Alternatively, Luke and Kilgore filed second notices of appeal from the February 24 judgment on May 9, within fourteen days of Sample's appeal from that same judgment on April 28, providing appellate jurisdiction under Federal Rule of Appellate Procedure 4(a)(3).

withdrawing is understandable as an administrative matter, and Luke cannot be held personally responsible for acts to which he had no connection or exercised no oversight. Although an attorney of record who does little day-to-day but has supervisory authority may be sanctioned, Luke had no involvement at all and cannot be held strictly liable based only his attorney of record status.[18] Accordingly, the sanctions order against Luke is REVERSED.

The district court did not abuse its discretion in sanctioning AUSA Kilgore. Although the central discovery violation - defendants' attorney, not defendants, signing the interrogatories, leading to inconsistent statements at a possibly unnecessary trial - was committed by Bureau of Prisons attorney Martin Sweaney just before Kilgore came on the scene, Kilgore was heavily involved during trial preparation and trial itself and was, therefore, responsible for preparing witnesses and ensuring that their testimony would cohere with their earlier statements.[19] Unlike Luke, then, Kilgore cannot claim complete disconnection from the case.[20] But we do think it an abuse of discretion that the court

---

[18] Sample argues that Luke was an "advisory attorney" and participated ever-so-slightly in the case after August 3, but the record, including statements by both Luke and the U.S. Attorney's Office in his behalf, belies that contention.

[19] Moreover, it appears that Kilgore responded to Sample's motion to compel the answers (which had just been tendered), hence she worked with the answers, and she was attorney of record when Sample complained about, and the court warned counsel about, defendants' failure to sign their answers.

[20] Although sanctions under the court's inherent power require a finding of "bad faith," sanctions under Rule 37 do not. See infra note 14. Under Rule 37(d), a court can sanction for failure to answer interrogatories. That is essentially what happened here - although answers were technically tendered, the answers were not signed by defendants and were at times flatly inconsistent with trial testimony, making them mostly worthless. Although Kilgore didn't tender them, she was responsible for ensuring their propriety - or correcting them before a trial at which she examined witnesses on topics

directed the money be paid to Sample; although Sample suffered some disadvantage - albeit not much, it seems, given his penchant, facility, and time for litigation - the purposes behind the sanctions would be better served if the money were to go to the court itself. Hence we MODIFY the order,[21] directing Kilgore to pay $500 to the clerk of the United States District Court for the Western District of Texas.

---

directly relating to the answers. We do not hold that she had "bad faith," only that she should've noticed a problem.

Sample makes a throwaway request that we order Kilgore to show cause why we shouldn't sanction her for misleading this court on appeal. Kilgore has been completely forthright on appeal, so we reject the request.

[21] *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1482 (9th Cir. 1992) (redirecting contempt payment from plaintiffs to court); *New York State Nat. Org. For Women v. Terry*, 886 F.2d 1339, 1354 (2d Cir. 1989) (same).